## CHESLEY *v.* PIERCE & SAWYER.

Under the provisions of the statutes of this State making stockholders liable for the debts of private corporations, stockholders are, in general, liable only for debts of the corporations contracted while they are stockholders.

Where the statute provided (sec. 1, chap. 147, Comp. Stat.) that the stockholders and officers of all corporations having for their object a dividend of profits among the stockholders, shall be personally liable for the debts and civil liabilities of such corporations, and the defendants became stockholders in the C. V. Railroad in April, 1850, and so continued up to the time of the commencement of the suit—*Held*, that they were not liable for a debt of the corporation contracted before they became stockholders.

ASSUMPSIT. The declaration set forth, in substance, that on the 13th day of December, 1851, there was duly organized in this State the Contoocookville Valley Railroad ; a corporation having for its object a dividend of profits among its stockholders ; that on said 13th day of December, 1851, said railroad was indebted to the plaintiff in the sum of $700, for money lent and advanced to the railroad for the construction of said road, and for money had and received to the use of the plaintiff; that on said 13th day of December the whole amount of the capital fixed and limited by the corporation had not been and never since has been fully paid in ; that the defendants were then and there stockholders of the corporation and personally liable for the debts

of the same, and for the debt aforesaid due the plaintiff; that on said 13th day of December the plaintiff made a legal demand for the payment of said debt on the corporation; and yet, notwithstanding the demand, and notwithstanding more than sixty days have long since elapsed since the demand, neither the officers or stockholders have paid the debt, or exposed property liable to attachment, for the discharge of the same; of all which the defendants had notice, and so became personally liable to pay said $700, but though requested have not paid it.

Under said declaration the plaintiff filed a specification, claiming to recover in this suit the amount of a certain certificate. Also, of three several coupons for interest originally attached to said certificate, one of which, due July 1, 1850, is hereafter set forth; the other two being in similar form, and due January 1 and July 1, 1851. Also, interest on the amount of said certificate from July 1, 1851, and on said coupons for interest from the time they respectively became due as aforesaid.

To prove said Pierce a stockholder in said road, the plaintiff offered a witness who testified that he formerly was treasurer of said road, and while so he kept a stock book on which he entered all receipts by him for stock. That book was produced, and in it appeared several credits to said Pierce of payments for stock; the first in January, 1849, and the last April 30, 1850; in all, $400, the amount of four shares. The witness testified that those entries were in his hand-writing, and were made by him at the time they purported to have been, when he knew they were correct, but he did not now recollect the particulars. He recollected, however, that Pierce paid him assessments on stock when he was treasurer. The plaintiff also offered a receipt for a certificate for four shares of stock, as issued in the name of Pierce as proprietor thereof, dated April 30, 1850, and signed by said Pierce.

To prove said Sawyer a stockholder, the plaintiff offered the testimony of the same witness, with the same stock-book. In the book was a charge of two shares of stock against Sawyer, as of Lawrence, Mass., and a credit to him of $50 towards said

stock, March 9, 1850. The witness testified that he had no recollection of ever having seen Sawyer, and that he had no recollection of ever having received any money for stock by the hand of third persons, except from persons at Hillsborough by Mr. Steele. From the evidence of another witness it appeared that Sawyer, about six years ago, resided in Lawrence, Mass., from whence he removed to Hillsborough, where he has ever since resided. The plaintiff also offered another witness, who testified that he formerly was clerk of the treasurer of the road, and made out and delivered certificates of stock. He produced a certificate book, on the margin of one leaf in which,—whence a certificate apparently had been cut,—was this memorandum : " No. of certificate, 644. No. of shares, 3. Date, January 3, 1851. Proprietor, Silas N. Sawyer. Received a certificate for the above. Rec't on file." The witness testified that this memorandum was in his handwriting, made by him at or about the time it purported to have been ; that he now had no recollection of the circumstances, but supposed he should not have made it unless it was true, and he now had no doubt it was true. He further testified that he sometimes delivered certificates to third persons for the parties ; did not recollect whether or not he did so in this case, and did not recollect of ever having seen said Sawyer.

As further evidence to prove the defendants stockholders in said road, as alleged in the declaration, the plaintiff offered a certified copy from the records of the clerk of Concord, of a list of the stockholders of said road on the first day of April, 1852, filed in the office of said clerk, April 6, 1852, verified by the affidavit of the treasurer of the road, with a certificate of said clerk that said list was the only one on file or of record in his office. In said list Pierce is returned as the owner of four shares, and Sawyer of three.

To all the foregoing evidence the defendants respectively objected, as incompetent to prove them stockholders in said road, as alleged.

To prove the due organization and continuance of the corpo-

ration, the plaintiff offered its records. From those it appeared that at a meeting of the grantees, holden for the purpose of organizing the corporation, &c., H. Hutchins was chosen " clerk of said corporation, who was sworn to the faithful performance of the duties of said office," and the record of the meeting is signed by him. No clerk of the grantees, as grantees, was chosen. Also, that at a meeting of the stockholders, Sept. 5, 1848, to choose directors, adopt by-laws, &c., S. M. Wheeler was chosen clerk *pro·tem.*, and made the record as such. To that record is annexed a certificate by a magistrate, that said Wheeler, November 11, 1848, made oath " that the foregoing record by him subscribed is true." Also, that at the first meeting of the directors, September 12, 1848, H. Hutchins was chosen clerk of the directors, and " sworn to the faithful discharge of the duties of his office," and made the record. Also, that the record of a meeting of the directors, September 26, 1848, at which a president and treasurer were chosen, is made by said Hutchins, and signed by " H. Hutchins," without any addition of title as clerk.

To prove the authority of the directors of the road to contract a loan of $40,000, the plaintiff offered the same records. From them it appeared that at a meeting of the corporation, May 2, 1849, the following resolution was passed:

" *Resolved,* That the directors be authorized to borrow a sum of money, not exceeding $40,000, for the use of the corporation, at the best rate of interest at which it can be obtained, and to pledge all the corporate interest of the road for the payment thereof."

Also, that at a meeting of the directors, held on the same day, C. Barton was chosen president, and J. H. George treasurer of the corporation. The records of both these meetings are made and signed by N. B. Baker as clerk. From other parts of the records it appears that said Baker was chosen clerk at a prior meeting of the directors, November 10, 1848. The record of that meeting is made by J. H. George, as clerk *pro tem.*, and, after reciting the election of Baker as clerk, states

that " the oath of office was then administered to Mr. Baker, and he then entered upon the discharge of the duties of the office, by J. H. George, Justice Peace." To this record is annexed a certificate by a magistrate, that, November 13, 1848, said George made oath that said record by him subscribed was correct and true.

The plaintiff also offered the same records, showing that at a meeting of the directors, May 3, 1849, a vote was passed authorizing the president, in conformity with the vote of the corporation above mentioned, to issue bonds, signed by himself and the treasurer, for all such sums of money as may be obtained at six per cent., payable July 1, 1851, and providing for the payment of interest semi-annually. The record of this meeting is signed by J. H. George, as clerk *pro tem.*, and to it is annexed a certificate by a magistrate, that, May 4, 1849, said George made oath that said record by him subscribed was true.

No evidence was offered of any qualification by the parties by whom all the records herein before mentioned respectively were made, for the office, except what appears in the several records as herein before stated, and said records are simply signed by the parties without any words of attestation. The defendants objected to all said records as therefore incompetent.

From other evidence offered by the plaintiff it appeared that said corporation, soon after its organization, in the fall of 1848, commenced the construction of its road within the limits of its charter, and continued the same till the completion of the road from Contoocookville to Hillsborough Bridge, when it was opened for public use, and has ever since been in operation.

The certificate to recover the amount for which this action was brought, with the coupons for interest attached, was executed in pursuance of the votes above recited, and delivered to the plaintiff by an agent of the road, for the amount thereof received in money by said agent, in or after May, 1849, and before 1850.

In the by-laws of the corporation it is provided that its seal shall be kept by the treasurer. A witness by whom this certificate is signed, as treasurer, testified that while he was treasurer

he never saw any seal of the road except on this and other certificates like it; that he never had or saw any separate seal of the corporation, and that the seal on this certificate is in the form prescribed by the by-laws of the corporation, without reference to the manner of impression, about which the by-laws make no provision.

The plaintiff moved for leave to amend the declaration so as to change the form of action from assumpsit into debt, but the court ruled that such leave could not be granted.

It was admitted by the parties that there was a due charter of the road; that its object was a dividend of profits among its stockholders; that its capital stock had never been fully paid in; that due demand of payment of this certificate, and of the coupons for interest, was made on the treasurer of the road, December 13, 1851, as alleged in the declaration; and that no officer or stockholder of the road has, since said demand, paid any of said demands, or exposed any property of the road to secure or satisfy them, but the same remain wholly unpaid to the plaintiff.

Whereupon it was agreed by the parties that the case should be transferred to the Superior Court of Judicature, for the determination of the foregoing and any other questions of law arising in the same; such order to be made and judgment rendered as said court shall thereupon order, with the right to review, as on a verdict, to either party.

· The certificate for the recovery of which the action was brought, and the coupon referred to were, as follows:

" CONTOOCOOK VALLEY RAILROAD. Loan authorized by the stockholders, May 2, 1849. No. 25, for $500.

This certifies that the Contoocook Valley Railroad Company are indebted to Samuel Chesley for moneys lent and advanced to said company, for the construction of the railroad authorized by their act of incorporation; and that in consideration thereof the said Contoocook Valley Railroad Company, and their successors, do hereby promise and agree to pay to Samuel Chesley, or bearer, the sum of five hundred dollars, on the first day of July, which will be in the year one thousand eight hundred and

fifty-one ; and also interest for the same at the rate of six per centum per annum on the first day of January and July, in each and every year ensuing the date hereof; and the holder of this certificate shall be entitled at any time before the said first day of July, 1851, to convert the said principal sum into the capital stock of the company at par, on surrendering this certificate and the remaining interest warrants hereunto attached. And all the corporate property of the Contoocook Valley Railroad Corporation is hereby pledged for the payment of this and so many other certificates as shall be issued, amounting in all to a sum not exceeding forty thousand dollars, in conformity with a vote of the corporation passed at the annual meeting, holden on the second day of May, 1849.

{ At this place, printed in red ink, and in circular form, are the words, " Contoocook Valley Railroad, incorporated June 24, 1848." }   In witness whereof, and in pursuance of a vote of the Directors, passed on the 3d day of May, 1849, their corporate seal is to these presents affixed, this 24th day of September, 1849.

CYRUS BARTON, *President.*

JOHN H. GEORGE, *Treasurer.*

$15.   The Contoocook Valley Railroad Company will pay to the bearer hereof, at their Treasurer's Office, Fifteen Dollars, on the first day of July, 1850, it being the interest to that date on their Certificate No. 25.

_____ *President.*

JOHN H. GEORGE, *Treasurer.*"

*Fowler*, for the plaintiff.

1. The evidence to prove Pierce a stockholder was not only competent but conclusive. The fact that he paid in $400, the amount of four shares, and that on the 30th of April, 1850, the date of the last payment, he received from the corporation, personally, a certificate of his ownership of those shares, and gave a receipt therefor, was distinctly shown.

2. The evidence tending to show Sawyer a stockholder, although less conclusive, was still competent. The witness re-

Chesley v. Pierce & Sawyer.

ceived $50 on account of his stock, March 9, 1850, and the certificate book shows that the defendant, or some one for him, took a certificate for stock on the 3d of January, 1851.

3. The copy of the list from the clerk's office, of Concord, was competent evidence to show that both the defendants were stockholders. The statute makes such list evidence against stockholders in suits of this character. It is evidence that the defendants were stockholders on the first day of April, 1852, and, the fact established that they were stockholders then, was certainly competent evidence for the jury tending to show them stockholders as alleged in the writ.

4. The action is well enough brought; the statute gives to the creditor his election to bring debt or assumpsit in all cases, as he may prefer. The language is, "proper actions of debt or assumpsit may be commenced," &c. Nor is it affected by the nature of the original debt of the corporation, whether upon a specialty or otherwise.

5. The certificate specified in this case is not a specialty. It is not under seal. The form of a seal, printed at the left side of the bottom of the certificate, is no seal. The object of a seal is to authenticate. This cannot be done except by having an actual seal in the custody of some proper officer, who alone shall be authorized to use it.

A seal is an impression upon wax, or wafer, or some other tenacious substance, capable of being impressed. *Warren* v. *Lynch*, 5 Johnson 239.

What is a seal, is a question of law; whether such thing has been affixed, of fact for the jury. A seal must be of wax, or wafer, or some other adhesive substance, capable of receiving impressions. *Beardsley* v. *Knight*, 4 Vermont 471.

The statute making an impression upon a paper a seal, so far as concerns courts and public offices, reäffirms the common law doctrine as to all other cases, and does not apply in this case. Revised Stat., chap. 1, sec. 9. If it did, it would not include it, for it speaks of "an impression of such official seal upon the paper alone." Here it was shown that the corporation had no

Chesley *v.* Pierce & Sawyer.

seal by the person who signed the certificate as treasurer, and there is no pretence that any impression had been made on paper by anything except the printer's type.

At common law the seal must be impressed on wax or wafer. A seal by stamping on paper is allowable only in such cases as are specified in the statute. *Bank of Rochester* v. *Grey*, 2 Hill 227. The seal of a religious corporation, or of a private individual, impressed directly on paper without wax, is a nullity. *Farmers' Bank* v. *Haight*, 3 Hill 493.

The statement in the certificate that it is sealed when no seal is affixed, does not make it a sealed instrument. *Vance* v. *Fauk*, 2 Scam. 263 ; *Williams* v. *Young*, 3 Ala. 145.

6. If the certificate were sealed, it could make no difference. The suit is for money lent. The case finds the loans of the money to the amount of the certificate, which was only delivered as evidence of its receipt. The certificate is merely an acknowledgement by the corporation of the receipt of the money, and a promise to repay it. In the suit against stockholders, it is only offered as evidence of the indebtedness of the corporation, and as such it is competent.

7. The three coupons are distinct promises by the corporation to pay, and do not profess to be under seal. The interest also upon these, as well as interest upon the certificate, after due, leave no taint of specialty upon them.

8. The declaration might have been amended by changing the form of action from assumpsit to debt, the action coming clearly within the provisions of secs. 10 and 11, chap. 186, Revised Statutes.

*Peabody*, (with whom was *Morrison*,) for the defendants.

1. Was any of the evidence offered to prove Pierce a stockholder competent ? The instrument declared on is dated September 24, 1849. The writ is dated October 8, 1852. The defendants incur no liability unless they were stockholders at the time the indebtedness of the company upon this bond accrued. *Moss* v. *Oakley*, 2 Hill 265 ; 5 Denio 567.

The books of the company are not competent evidence to prove Pierce a stockholder. When defendants' membership of the company has been proved *aliunde,* then the books of the company become evidence as against him, but not till then. The proof that Pierce took a certificate of stock, April 30, 1850, is no evidence that he was a stockholder prior to that time.

Was Sawyer a stockholder September 24, 1849 ? The company's books are not evidence against Sawyer. But even if they were, they only show " a credit to him of $50 towards the stock, March 9, 1850." And membership at that date would not render him liable in this action, upon the principle before stated.

The copy from the records of the town of Concord was only competent evidence to show that defendants were stockholders on April 1, 1852. It had no tendency to prove them stockholders prior to that date, and was not competent for that purpose. If defendants had been proved stockholders in 1848, the legal presumption might be that they continued such. But it is absurd to presume that because they were members in 1852, they were so in 1849.

2. The form of the action is misconceived. Plaintiff should have declared in *debt* and not in *assumpsit.*

The language of the statute authorizing suits against stockholders, (Comp. Laws, p. 313, sec. 3,) provides that " proper actions of debt or assumpsit * * may be commenced," &c. We suppose the meaning of the statute is this, that in cases where *debt* is the proper form of action, *debt* shall be brought; when *assumpsit* is the proper form, *assumpsit* shall be brought. If, then, the instrument sued on is a specialty, *debt* is the only proper form of action, and plaintiff must be nonsuited, unless he can amend by changing the form of action, or unless he can recover on the coupons, aside from the bond.

Is the certificate an instrument under seal ? The case finds that " in the by-laws of the corporation, it is provided that its seal shall be kept by the treasurer;" and " that the seal on this certificate is in the form prescribed by the by-laws, without reference to the manner of impression, about which the by-laws make no provision."

Plaintiff's brief says, " it was shown that the corporation had no seal, by the person who signed the certificate as treasurer." The case finds only that the treasurer testified, " that while he was treasurer he never saw any seal of the road, except on this and other certificates like it; that he never had or saw any separate seal of the corporation."

The defendants believe it to be a seal, according to the intimations of this court and the weight of authorities generally.

The seal in question is a printed impression of the corporate seal, or what purports to be the corporate seal, on paper. At common law a seal must be on wax or a wafer. 4 Kent, 1st Ed., 444. But in several of the United States a scroll or flourish is substituted. Angell & Ames on Corp. § 218.

The relaxation of the common law in this respect is made by statute in some of the States, and in others upon the strength of Sugden's authority, that an impression on paper, with intent to seal, is sufficient. 4 C. & H. Phil. Ev. 823.

Have we in this State adopted any such substitute for a seal? Rev. Stat., chap. 1, sec. 9, merely provides that an impression on paper shall be sufficient in case of official seals. But this court seems to have extended the doctrine somewhat further in *Carter* v. *Burley*, 9 N. H. 569, and to have taken a view of the common law more liberal than that established by authority.

It would seem that three qualities should be found in a seal. 1. The *solemn ceremony*. 2. A *permanent impression*. 3. An *unmistakable character*. All these are found more perfectly in a seal printed or stamped on paper, than in a wax or wafer seal.

A scroll wants the unmistakable character. Here, that the seal is stamped with ink, or printed, can make no difference. The printing is an impression with the addition of ink. This seal is as permanent as the instrument itself, and to it the reasoning in *Carter* v. *Burley* applies. Moreover, in New-Hampshire these instruments are universally regarded as sealed, as bonds, and are everywhere so called, and, as the case finds, are so called on the records of the company.

Under the provisions of their charter, the corporation had a

right to adopt a corporate seal, and such a seal as they chose. They did adopt this seal so far as this " certificate" was concerned.

3. If the court hold that the instrument declared on was a specialty, the court below was right in ruling that the declaration could not be amended. The decisions of this court have been uniform on this point, and sustain the court below. Rules of Court 14.

The following cases show the practice of this court in this matter. *Butterfield* v. *Howell*, 3 N. H. 261; *Goddard* v. *Perkins*, 9 ditto 488; *Merrill* v. *Russell*, 12 ditto 74; *Melvin* v. *Smith*, 12 ditto 462; *Lawrence* v. *Langley*, 14 ditto 72.

In Massachusetts the same rule has prevailed. *Haynes* v. *Morgan*, 3 Mass. 215; *Guilford* v. *Adams*, 19 Pick. 378; *Wiley* v. *Gale*, 1 Met. 554.

4. If the court hold that the plaintiff cannot recover on his certificate in this form of action, can he recover on the coupons?

We say that the coupons were merely a convenient form of receipt, to be severed from the certificate and surrendered to the company when interest was paid, and were without consideration.

5. The corporation had no power to raise money by the issue of bonds. The charter provides a certain way by which funds were to be raised for the use of the company; by making equal assessments, from time to time, on all the shares in the corporation; by the sale of shares, on neglect to pay assessments, and by creating new shares.

EASTMAN, J.* The act incorporating the Contoocook Valley Railroad was passed June 24, 1848, and the grantees were made a corporation " with all the rights and privileges, liabilities and duties, by the laws of this State incident to railroad corporations."

By the Revised Statutes, chap. 146, § 1, it is provided that

* PERLEY, C. J., and FOWLER, J., having been of counsel, did not sit.

the stockholders of incorporated companies, thereafter incorporated, having for their object a dividend of profits, and the stockholders of corporations then existing, whose charters were subject to amendment or repeal, " shall be personally holden to pay the debts and civil liabilities of such company, hereafter contracted or incurred, in the same manner and to the same extent as though the stock were owned and the business transacted by the stockholders as unincorporated copartners ;" subject, however, to exceptions and modifications therein after provided for.

The exceptions and modifications spoken of require a previous demand to be made upon the company before suit against a stockholder, and the mode of proceeding is particularly set forth. There is no limitation, however, to the general liability of the stockholders to pay all the debts of the corporation, as set forth in the first section, if the proper steps are taken to charge them.

This first section of chap. 146, Revised Statutes, was in terms repealed by the act of July 8, 1846, and also such other parts of the statutes then in force as might be inconsistent with that act. (Chap. 321, Pamphlet Laws.) And instead of this section the general provision was made, as follows : " All corporations, having for their object a dividend of profits among their stockholders, hereafter incorporated, or whose charters are subject by law to alteration, amendment or repeal, shall be governed by the provisions and subject to the liabilities in this act contained ; and the stockholders and officers thereof shall be personally liable for the debts and civil liabilities of such corporations, in the following cases and not otherwise :"

" 1. They shall jointly and severally be liable for all debts and contracts of such corporations until the whole amount of the capital, fixed and limited by such corporation, shall have been paid in, and a certificate thereof shall have been made and recorded by the clerk of the town where such corporation has its place of business, or is situated."

Several other instances are also enumerated in which it is declared that they shall be liable ; such as a reduction of the capital stock before the debts are paid ; but they need not be stated, as they do not affect this case.

By the Revised Statutes, chap. 146, § 6, it is provided that every such company shall, within five days from the time of its being organized for the transaction of business, cause to be delivered to the town clerk of the town in which the company has its principal place of business, a list of the stockholders, and the shares owned by each ; and the 7th section of the same chapter provides that from and after the time in which such list is required to be so left, no transfer of stock by any stockholder shall exonerate him from his personal responsibility " for the debts and liabilities of the company afterwards contracted or incurred, unless the same be in writing, and recorded in the office of the town clerk of the town in which such principal place of business is located."

These two sections of the Revised Statutes were repealed by the act of July 10, 1846, (Pamphlet Laws, chap. 322 ;) and instead thereof the provision, among others, was made, that the list of the stockholders should be filed with the town clerk in sixty days after the organization of the company and its preparation to transact business. It was also further provided, in the second section of the act, that any person whose name was on the list should be deemed to be a stockholder, until his name was stricken from the list ; " provided, that any stockholder in any such corporation who shall sell and assign all his stock in the same, may immediately notify such town clerk in writing of the time when he sold and assigned such stock, and the names and places of residence of the persons to whom he sold ; and in all such cases the stockholder so selling his stock shall be exonerated from all debts and liabilities of said corporation contracted after such sale and notice ; and the persons purchasing such stock shall be liable for such debts and liabilities, contracted after such purchase and notice, in the same way and manner as the person selling such stock would have been if he had not sold."

Now, waiving the question whether assumpsit is the proper form of action to be brought on an instrument like the one in suit, and whether the company had the right to issue bonds or obligations in the manner in which this was issued, (in regard to

both of which questions we express no opinion ;) and admitting that the evidence was competent to show the defendants to be stockholders at the time this action was commenced, still, a very important question arises, whether, under the provisions of the statutes cited, the defendants can be charged ?

This obligation was issued on the 3d day of May, 1849, and the plaintiff became the holder of it prior to 1850. The defendants, however, were neither of them stockholders before the 30th of April, 1850. Admitting that the defendant Pierce made a payment towards his shares as early as January, 1849, still the payments were not all made till April, 1850, and his certificate for stock was not issued till then. Sawyer made no payment till March 9, 1850, and his certificate was issued January 3, 1851.

We do not intend to say that a person may not be a stockholder in a corporation without having in his possession a certificate of his shares. If by his acts or words he makes what may amount to a proposition to become a stockholder, and pays for his stock, and the corporation accepts the money, such acts, independent of any provision in the charter upon the subject, might be sufficient for a jury to find a contract for membership between the individual and the corporation, by which he would become a stockholder without any formal vote of the corporation to that effect, and without any issuing of a certificate for shares. Or if he should subscribe for stock, and the corporation should by vote accept him as a member, this might be sufficient, without payment for the shares. *Chester Glass Co.* v. *Dewey*, 16 Mass. 94. But here certificates were issued; to Pierce on the 30th of April, 1850—on the day on which the last payment was made ; and to Sawyer on the 3d day of January, 1851. It cannot be said that they were stockholders before those dates, for the evidence is that the payments for the stock were not all made till the day on which the certificates were issued ; and there is nothing having a tendency to show them stockholders till that time. There was no action of the corporation accepting them as stockholders. They may have been subscribers for shares, but their

shares were not paid for, and the corporation had not accepted the defendants as stockholders until the certificates were issued. And we do not understand that the plaintiff makes any particular question upon this point.

This distinct question, then, is presented, Can the defendants be charged for a debt incurred before they became stockholders, notwithstanding they may have been stockholders at the time the suit was brought ? This question has been considered upon statutory provisions somewhat similar to ours in several of the States.

The general statute of Massachusetts upon manufacturing corporations contains a section substantially the same as the first section of our act of July 8, 1846. And the Supreme Court of that State, in the case of *Curtis* v. *Harlow*, 12 Met. 3, have decided that the provisions of the section extend to those who are members when the liability of the company is sought to be enforced, and is not confined to those who were members when the debts were contracted.

This decision is placed upon the ground that such is the meaning of the language of the statute. *Dewey, J.*, who delivered the opinion, says, that the language of the statute necessarily embraces all persons who are members at the time when the liability is to be enforced ; that those who became stockholders after the date of the contract are as fully members of the company as the earlier associates ; that the term " members " must be held to include all the actual stockholders, and that with their membership they take all the benefits and the responsibilities which attach to that relation. Whether those who are stockholders at the time the debt is contracted, but cease to be members before the commencement of the suit, are liable, is not decided by that case. In regard to that the court express no opinion, but say it may be that both are liable.

The language of the Massachusetts statute is somewhat stronger than ours ; the phraseology is, " *all* the *members*" of every manufacturing company shall be liable, &c. ; and from an examination of their statute we do not find any provision like

that contained in the second section of our act of July 10, 1846, (above cited,) providing that a stockholder who shall sell his shares and notify the town clerk having the list, shall be exonerated from all debts contracted after such sale and notice, and that the purchaser shall be liable for the debts contracted after such purchase.

In Connecticut the court have been divided upon the question; a majority, however, deciding the point in the same way as in *Curtis* v. *Harlow*, in Massachusetts. See *Southmayd* v. *Russ*, 3 Conn. 54; *Middletown Bank* v. *Magill*, 5 Conn. 28; *Deming* v. *Bull*, 10 ditto 409.

In New-York, where the provision of the act was, that " the stockholders of said corporation shall be jointly and severally personally liable for the payment of all debts or demands contracted by the said corporation," &c., the Supreme Court, in the case of *Moss* v. *Oakley*, 2 Hill 265, held that the suit could be brought only against such as were stockholders when the debt was contracted, and not those who become so afterwards.

In delivering the opinion of the court, *Bronson, J.*, says, that the statute is capable of either construction without doing any violence to the language, but he thinks that the construction given by the court will best answer the end which the legislature had in view.

The phraseology of this statute is almost identical with ours; the words, " jointly and severally," however, being introduced into the New-York statute, which are not embraced in ours.

This same statute was afterwards considered in the Court of Errors of New-York, in the case of *McCullough* v. *Moss*, 5 Hill 567. Several opinions were delivered by honorable senators, but they were not agreed in the construction to be put upon the statute. Some held that it applied to those only who were members when the suit was commenced, while others advanced the same views as those entertained by the Supreme Court in the case of *Moss* v. *Oakley*. There were other points in the case, and the decision did not turn upon this point alone.

In *Allen* v. *Sewall*, 2 Wendell 327, the words of the statute

were that " the members of the company shall be liable individually," and *Savage*, C. J., said, " it was the intention of the legislature to put the defendants (the stockholders) upon the same footing as to the liability as if they had not been incorporated. *Individual* liability in the act must be understood in contradistinction to *corporate* liability ; and the defendants must, therefore, be held responsible to the same extent, and in the same manner, as if there was no act of incorporation."

These are the only cases that we have met with that bear upon the point, and it will be seen that, so far as they go, the question is not settled. We are, therefore, brought to give such construction to the statute, independent of authority, as we think the legislature intended and the language of the act requires.

It will be observed that the first section of the Revised Statutes, which we have quoted, made the stockholders personally liable " in the same manner and to the same extent as though the stock were owned and the business transacted by the stockholders as unincorporated copartners." Such is the language of the statute ; that is, their liabilities were to be precisely the same as though the business were carried on by a partnership instead of a corporation ; subject, of course, to the other provisions of the act, that the creditors should demand payment of the corporation before suit against the individual stockholders. Standing, then, under that statute in the position of partners, stockholders would be liable for the payment of such debts and such only as should be contracted while members of the corporation. Such is the general rule in regard to partnerships. A person is not individually liable for the debts of a firm contracted before he becomes a member of it, nor for those contracted after he leaves it, unless there be some agreement to that effect when he unites with or leaves the partnership. We state this as the general principle, and do not of course allude to the particular powers of partners in settling the affairs of a partnership after dissolution.

We entertain no doubt that under the Revised Statutes stockholders could be made liable in their individual capacity only as

copartners ; that consequently they would be liable for those debts only which were contracted while members of the corporation ; and that were we to decide this suit under that statute, judgment would have to be entered for the defendants.

The question then arises, did the act of July 8, 1846, change the law in this respect ? Was it the intention of the Legislature at that time to make the personal liability of stockholders greater than that of copartners, and greater than it had been theretofore ? We think not ; and the whole scope of the act appears to us to show clearly that the intention was to limit instead of extending that liability. Hence the repeal of the action fixing the general liability, and the enactment of the provisions particularising the defaults which should make the stockholders personally liable ; one of which appears in this case, viz. : that the debt was contracted before all the stock was paid in.

It is true, that the act of 1846 does not in terms specify the manner and extent of the liability, as is done by the Revised Statutes ; but it is also true that there is nothing in the language of the act requiring a construction that shall impose a greater liability than that which attaches to partners. The language of the section is, that " the stockholders and officers shall be personally liable for the debts and civil liabilities of the corporation." Stockholders are spoken of in connection with the contracting of the debts ; and such as were then stockholders, when the debts were contracted, would seem to be those intended, and not those who might become members afterwards. At all events, there is nothing in the phraseology requiring a different construction.

And this construction is, we think, the one best calculated to do justice between the parties. He who purchases stock and comes into a corporation after it has been engaged in business, may often be deceived in relation to the number and magnitude of its debts, but while he is a stockholder he can know something about the extent of the obligations contracted by the company, and is not wholly without the means of exerting an influence over those who manage its concerns. And as to those who

deal with the corporation, they bestow their labor or part with their money or property on the credit of the corporation, and those who are known to be stockholders; and so far as the responsibility of the stockholders is to be considered, it might oftentimes be ruinous to a creditor to turn him over to persons with whom he did not deal, and who may have come into the corporation at a subsequent period; they may be much less able to respond to creditors than were those who owned the stock at the time the debt was contracted. *Moss* v. *Oakley*, 2 Hill 270.

The stockholders are made guarantors for the payment of the debts of the corporation; not guarantors in the technical sense of the term, but they are liable in the cases stated in the act, when the corporation shall fail to make the payments. And what principle can be more just or equitable than that which makes a stockholder liable for those debts, and those only, which are contracted while he is a member of the association, participating in its business and transactions, and sharing in its advantages and profits? And why should he be liable for debts contracted before he has become a member, when he had no connection with the company, or for those incurred after he has parted with his stock, and honestly left the association? We think that the justice of the matter requires that his liability should be coëxtensive with his membership; that so long as he is a stockholder he should be liable for the debts then contracted, and not for those incurred either before he joined the company or after he left it; and that such was the intention of the Legislature that passed the act, and the proper construction to be put upon it.

And we are confirmed in the opinion that such was the intention of the Legislature, by recurring to the act of July 10, 1846, a portion of which we have quoted, which provides that upon a sale of stock and notice to the town clerk where the list is filed, the stockholder so selling his stock shall be exonerated from all debts and liabilities of the corporation contracted after such sale and notice; and that the purchaser shall be liable for such debts as may be contracted after such purchase.

This act would seem to indicate quite clearly the intention of the Legislature to place the stockholders in this respect on the ground of partners.

This list, which is filed with the town clerk, is for the benefit of those who deal with the company. They may resort to it to see who are the stockholders, that they may the better know whether to trust the corporation or not; and it is the names that they find there to which they give credit, and not those that may have been there a year before, or may be there a year after.

And by the express terms of the act, also, it is those whose names are then there who are liable for debts *then* contracted, and not for debts contracted thereafter; and those who subsequently become members are not liable for the debts previously contracted.

As the decision of this point in the case goes to the foundation of the plaintiff's right of recovery, we have found it unnecessary to examine the other questions.

According to the agreement of the parties, as expressed in the order of transfer, there must be

*Judgment for the defendants.*